# CHARLESTON.

DANIELS *et al. v.* COUNTY COURT OF RANDOLPH COUNTY.

Submitted January 12, 1911.   Decided November 7, 1911.

1. HIGHWAYS—*Injuries from Defects—Care Required.*

Where an old road or way, becomes dangerous to travel, is abandoned for a new location, established, public authorities in charge of the work must put up barriers or warnings to protect persons traveling thereon, acting upon the belief, justified by appearances, that the old way is still open, and it is negligence not to do so.   (p. 677).

2. SAME—*Injuries from Defects—Contributory Negligence.*

While persons traveling on a public highway in the night time are required to exercise such ordinary care and caution, as a reasonably prudent man would exercise under the circumstances, and in view of the darkness, they have the right in the absence of knowledge to the contrary, to act on the assumption that such highway is in a reasonably safe condition for travel by

night as well as by day, and are not bound to anticipate danger-
ous defects therein without some notice or other precaution
taken for their protection.  (p. 679).

· 3.   SAME.

Where a highway containing a plain well-beaten track is dis-
continued, it is the duty of the public authority responsible
therefor, to give such notice or warning, or erect such barriers
as will prevent its use by travelers by night as well as by day,
and in the absence of such notice travelers have the right to
presume that such highway has not been discontinued or ob-
structed.  (p. 680).

4.   SAME—*Injuries from Defects—Contributory Negligence—Ques-*
*tion for Jury.*

A case in which the evidence of prior knowledge of the dis-
continuance of or defects in an old road is not sufficient to
show, as matter of law, contributory negligence of plaintiffs,
injured while traveling thereon in the night time.  (p. 680).

Error to Circuit Court, Randolph County.

Action by M. L. Daniels and others against the Randolph
County Court.  Judgment for plaintiffs, and defendant brings
error.

*Affirmed.*

*H. G. Kump,* for plaintiff in error.

*Samuel J. Spears,* for defendants in error.

MILLER, JUDGE:

Plaintiffs recovered against defendant, on the verdict of a
jury, a judgment for $304.50, damages for personal injuries al-
leged to have been sustained by Mrs. Daniels, while traveling
with her husband over a public road.  The correctness of that
judgment is brought in question by the present writ of error.

The demurrer to the declaration, in two counts, we think was
properly overruled.  The action of the court thereon is assigned
as error here, but does not seem to be seriously relied upon.  The
negligence of the defendant, alleged to have resulted in the in-
juries sustained by the wife, is that it permitted the public road,
known as the Files Creek road, at a place where it crosses Files
Creek in said county, to become and remain out of repair; that
at a short time prior to the date of her injuries very high waters

in said Files Creek had washed, excavated and dug away a large portion of said road, where the same crossed said creek, producing a steep and perpendicular descent into said creek, rendering the road impassable, and exceedingly dangerous to persons using the same, particularly in the night time; that some time thereafter, and before Mrs. Daniels sustained her alleged injuries, the surveyor of said road pretended to change the location thereof where it crossed said creek, and to abandon that portioin of the old road where it crossed said creek, and where the washout occurred, but had left the old road washed, excavated and dug out as aforesaid, open to the use of the public, and had neglected to erect any guard, fence or barrier, so as to give warning and notice that such pretended change had been made, as it is alleged it was his duty to do, whereby and by reason whereof, it is alleged, said plaintiffs, together with their two children, then lawfully on said road and in the exercise of due care, in the night time, suddenly and without any warning or notice of any kind, that said public road was so out of repair, were precipitated over said descent and into said creek, whereby and by reason whereof the plaintiff Carrie Daniels sustained the injuries of which the plaintiffs complain.

The facts are few, and there is little, if any, material conflict in the evidence. The accident occurred on the night of August 31, 1907, about nine o'clock. The evidence is that the night was very dark. The plaintiffs were on their way from Beverly to the home of the father of M. L. Daniels, who lived on Files Creek, within some three hundred yards of the place of the accident. Plaintiffs lived at Elkins, and, so far as the record shows, they knew nothing of the condition of the road at this crossing. They had heard of high waters occurring about July 17th, and that the roads had been washed out in places, but did not know of the condition of this road, or that any portion of it had been abandoned and a new location made. The old road, the abandoned part, ran south from Beverly, in the direction in which plaintiffs were traveling, around the foot of a hill to the point where it crossed the creek. This new road was made by simply laying down the fence enclosing an adjoining meadow, removing some rocks in the way, and by making fills in one or two places. After it was opened, the evidence shows

the public generally used the new way, the old one being aban-
doned because impassable, where it crossed the creek.

Defendant denies negligence, but the principal defense is
contributory negligence on the part of plaintiffs.

The evidence of the road surveyor, and of one or two other
witnesses, tends to show that some rubbish washed in the road
by the flood, and some brush and a pole put up across the aban-
doned way served as a barrieir to travel on the abandoned way;
but other witnesses, including the road surveyor of an adjoining
section, who did the work of opening the new way, say there
was no barrier or pole erected across the old way. The evidence
makes it quite certain that on the night of the accident there
was no pole there and no barrier or warning sufficient to ob-
struct the passage of the plaintiffs over the abandoned road.
The evidence is that it was old and worn, and easily seen, while
the new way could not be seen in the darkness, by persons trav-
eling in vehicles.

The authorities seem to be quite uniform in holding that
where an old and dangerous road or way is abandoned for a new
one established, public authorities in charge of the work must
put up barriers or warnings to protect travelers, acting upon the
belief, justified by appearances, that the old way is still open,
and that it is negligence not to do so. 2 Elliott on Roads &
Streets, (3rd Ed.) section 801; *Bills* v. *Town of Kaukauna,* 94
Wis. 310, 68 N. W. 992, and cases cited; 37 Cyc. 291, and notes;
28 Cyc. 1403-1405, and cases cited in notes.

But were plaintiffs guilty of contributory negligence, barring
recovery? Contributory negligence, when it depends on facts
and testimony, is a question for the jury. *Snoddy* v. *Hunting-
ton,* 37 W. Va. 111. Our decisions say, however, that where the
facts and evidence show as matter of law, that plaintiff was
guilty of contributing to his injuries, the court should,
on motion of defendant, exclude all the evidence from
the jury. *Slaughter* v. *Huntington,* 64 W. Va. 240-1, and cases
cited. The rule is also well settled in this and other states
that a traveler on a public highway can not close his eyes to
open and patent defects and dangers. If plaintiffs had been
traveling in the day time, with the new way and the dangers of
the old plainly in sight, as the evidence shows they were, the

authorities say they could not recover. Travelers on a highway must use their senses, and are not permitted to shut their eyes to open and obvious defects and dangers in the way. For injuries thus sustained, due to negligence on their part, damages for injuries sustained can not be recovered. *Hysell* v. *Central City,* 68 W. Va. 769, and cases cited.

What is the rule, however, where persons are using a public road in the night time? It is well stated, with copious citations, in 28 Cyc, 1431, as follows: "A person traveling on a street or public way in the night-time is required to exercise such ordinary care and caution as a reasonably prudent man would exercise under the circumstances, and in view of the darkness; and ordinary care in the night-time may call for greater caution than in the day time. In exercising ordinary care a traveler at night, in the absence of knowledge to the contrary, has the right to act on the assumption that the street or way is in a reasonably safe condition for travel by night as well as by day, and is not bound to anticipate that he will encounter excavations, without having some notice thereof by lights, or without other precautions taken for his protection. A failure to use prudence commensurate with obvious conditions constitutes negligence."

Tested by this rule can we say as matter of law that plaintiffs were guilty of negligence precluding recovery? Unless we can do so, the question then being one of mixed law and fact for jury determination, on proper instruction by the court, we should not disturb the verdict and judgment of the court below. As particularly pertinent to the case at bar, it was decided in Wisconsin, in *Bills* v. *Kaukauna, supra,* that, "Where a highway containing a plain and well-beaten track is discontinued, it is the duty of the town to give such notice or warning or erect such barriers as will prevent its use by travelers by night as well as by day; and in the absence of such notice travelers have a right to presume that such a highway has not been discontinued or obstructed."

To reverse the judgment below, defendant relies on the admissions of plaintiffs that on the night of the accident in question they knew that floods had prevailed in Files Creek and in other creeks, some two weeks previous, and that the roads had been washed in some places; and that before reaching the place

of the accident, Mrs. Daniels had suggested to her husband that he had better walk ahead and see if there were any washouts, and to which he replied, that the roads had been used, that wagons had gone over it, and that it was all right. He proved, however, that he had no reason to believe this road, if damaged by the floods, had not been repaired in the mean time, or that it was unsafe. Mrs. Daniels' testimony is as follows: "Q. Now, Mrs. Daniels, it was dark when you left Beverly, or about so? A. Yes; it was getting dark I remember. Q. And you told your husband you thought it was dangerous to go, or he had better not go? A. I don't remember about that. Q. You said something before you got well started on the road? A. While we were on the road I mentioned to him perhaps there was some danger. I don't remember whether it was after we were going up that road, or not. Q. And he still thought it was merely a woman's weakness, and that you were afraid? A. He didn't pay any attention to me I know. Q. Now then you got up to the ford of Files' Creek there? A. Yes. Q. This left hand prong that comes down by the Beverly Road. Do you remember now whether you told him again that he had better get out and see if it was safe? A. No, I didn't say anything to him. He made the remark to me that there was the fence. He says it is all right. Here is the fence that goes along the road. Q. Then you were looking out for difficulties when you saw that? A. When we saw that we just drove on. Q. But you must have been looking for difficulties when he said, 'All right, there is the fence.' A. That is what he said. Q. But you were looking out for difficulties. A. I was uneasy, I admit, but I don't think he was. Q. He was very willing to take the risk. Now, Mrs. Daniels, how far was that below the ford that he remarked, 'There is the fence'? A. I don't remember. He says, 'There is the fence that goes around, and it is all right.' I don't know whether the fence is still there or not."

We do not think this evidence sufficient to show negligence on the part of the plaintiffs or either of them. True they had heard of high waters in the creeks, and Mrs. Daniels appears to have had some apprehensions that the road might be dangerous; but her husband, familiar with the road, and knowing that some two weeks had elapsed, after the high waters had subsided, and

who appears to have been driving cautiously, had the right to assume, as the authorities hold, that if the road had been damged, it had, in the mean time, been made reasonably safe for travel by night as well as in the day time; or if rendered dangerous, and any part of it had been abandoned for a new location, that some sign or warning would be given to protect travelers upon the road.

For the reasons given we are of opinion to affirm the judgment.

*Affirmed.*